Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| Cooperativa De Seguros De Vida De Puerto Rico – COSVI<br><br>**Apelante**<br><br>V.<br><br>Alfredo Ocasio, en su capacidad oficial como Comisionado De Seguros De La Oficina Del Comisionado De Seguros De Puerto Rico Y Otros<br><br>**Apelados** | TA2025AP00299 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil. Núm. SJ2024CV10453<br><br>Sobre: MANDAMUS Y OTROS |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 14 de octubre de 2025.

El 29 de agosto de 2025, la Cooperativa de Seguros de Vida de Puerto Rico (COSVI o la apelante) compareció ante nos mediante un recurso de *Apelación* y solicitó la revisión de una *Sentencia* que se emitió y notificó el 10 de julio de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante el aludido dictamen, el TPI declaró Ha Lugar la *Moción de Desestimación a Demanda Enmendada* que presentó el Estado Libre Asociado de Puerto Rico (ELA) y, en consecuencia, desestimó la reclamación de epígrafe.

Por los fundamentos que expondremos a continuación, ***confirmamos*** el dictamen apelado.

## I.

El 9 de mayo de 2025, COSVI presentó una *Demanda Enmendada* en contra del ELA, la Oficina del Comisionado de Seguros de Puerto Rico (OCS), el Sr. Alfredo Ocasio, en su carácter oficial como el Comisionado de Seguros de la OCS (Comisionado de Seguros), el Departamento de Hacienda de Puerto Rico (Hacienda), el Sr. Ángel Pantojas Rodríguez, en su carácter oficial como el Secretario de Hacienda (Secretario de Hacienda), la Oficina de Gerencia y Presupuesto (OGP) y el Sr. Orlando Rivera Berríos, en su carácter oficial como el Director de la OGP (Director de la OGP) (en conjunto, la parte apelada).[1] En esta, alegó que, el 30 de junio de 2013, se aprobó la Ley Núm. 40-2013, también conocida como la *Ley de Redistribución y Ajuste de la Carga Contributiva* (Ley Núm. 40-2013), para entre otras cosas, enmendar la Ley Núm. 77 de 19 de junio de 1957, según enmendada, mejor conocida como el *Código de Seguros de Puerto Rico*, 26 LPRA sec. 101 *et seq.* (Código de Seguros), para incorporar el Art. 7.022(a), el cual disponía lo siguiente:

> Se impondrá, cobrará y pagará, además de cualquier otra contribución impuesta por este Código o por la Ley 1-2011, según enmendada, conocida como el "Código de Rentas Internas para un Nuevo Puerto Rico", una contribución especial para los años contributivos comenzados con posterioridad al 31 de diciembre de 2012 a cada asegurador una contribución sobre primas de uno por ciento (1%) en adición a la contribución sobre primas dispuesta en el Artículo 7.020 de esta Ley. Esta disposición será aplicable sólo sobre primas devengadas con posterioridad al 30 de junio de 2013. Las reglas dispuestas en el Artículo 7.020 serán de aplicación a esta contribución especial sobre primas, pero la exención dispuesta en el Artículo 7.021 no será de aplicación.

Así, esgrimió que según el Art. 7.022(c) de la Ley Núm. 40-2013, la contribución especial sobre primas se debería pagar al Secretario de Hacienda, por conducto de la OCS. No obstante,

---

[1] Entrada Núm. 25 en SUMAC TPI.

sostuvo que a tenor con la Ley Núm. 239-2004, según enmendada, también conocida como la *Ley General de Sociedades Corporativas de Puerto Rico de 2004*, 5 LPRA sec. 4381 nota *et seq.* (Ley Núm. 239-2004), los aseguradores cooperativos gozaban de una exención que los eximía de todo tipo de tributación y(o) contribución que el Gobierno de Puerto Rico había impuesto o pudiese imponer. Por tanto, razonó que la contribución especial era inaplicable a los aseguradores cooperativos.

A pesar de esto, manifestó que, ante una solicitud de consulta realizada por la OCS en enero del año 2016, Hacienda insistió en la aplicabilidad de la contribución especial a las cooperativas. A tales efectos, aseveró que se vio obligada a someter los pagos de la contribución especial por ocho (8) años comprendidos entre el 2013-2020, ambos inclusive, lo cuales ascendían a una suma de $3,705,855.00. Sin embargo, indicó que, el 7 de marzo de 2022, se aprobó la Ley Núm. 7-2022, con el único propósito de aclarar que la contribución especial no era aplicable, y nunca debió aplicar a los aseguradores cooperativos. Por lo que, esbozó que, desde al menos el 31 de marzo de 2022, COSVI había realizado solicitudes formales de reembolso de la contribución especial pagada indebidamente, tanto al Comisionado de Seguros, como a Hacienda, junto con las copias de los cheques relacionados para acreditar el pago. Aun así, puntualizó que dichas solicitudes, al igual que otras acciones posteriores habían resultado infructuosas.

Conforme a lo anterior, alegó que habiendo transcurrido treinta (30) meses desde sus misivas de marzo de 2022, el 8 de octubre de 2024, cursó una solicitud a la OCS y Hacienda para que se le reembolsara lo erróneamente pagado por concepto de la contribución especial a tenor con lo establecido en el Art. 7.050 del Código de Seguros, 26 LPRA sec. 705. Así, indicó que, el 18 de octubre de 2024, la OCS cursó una misiva en la cual el Comisionado

de Seguros reconoció y admitió que la contribución especial fue indebidamente recaudada de COSVI y procedía su reembolso. Por lo cual, solicitó que: (1) se emitiera una sentencia declaratoria declarando que Hacienda y la OCS recaudaron injustificadamente de COSVI la contribución especial a la cual no estaba legalmente obligada, por ello, procedía el reembolso de la suma de $3,705,855.00; (2) expidiera un *mandamus* mediante cual se ordenara al Comisionado de Seguros y al Secretario de Hacienda que reembolsara la suma de $3,705,855.00, más intereses acumulados y cargos por mora; y, por último (3) impusiera el pago de una suma por conceptos de gasto y honorarios de abogados.

En respuesta, el 27 de mayo de 2025, el ELA, por si y en representación de Hacienda, la OCS, la OGP y los funcionarios demandados en su carácter oficial, presentó una *Moción de Desestimación a Demanda Enmendada*.[2] En esencia, alegó que procedía la desestimación de los recursos solicitados ya que: (1) COSVI carecía de legitimación activa porque no estableció un daño real y concreto a causa de la falta de reembolso; (2) no existía un deber ministerial incumplido por parte de las agencias concernidas, al igual que el apelante podía litigar la viabilidad legal de un reembolso, cobro de dinero y/o daños por la vía ordinaria, por lo cual, tenía un remedio adecuado y eficaz disponible en ley; y (3) la solicitud de sentencia declaratoria era una petición impermisible de opinión consultiva toda vez que COSVI carecía de legitimación activa, además, que no existía incertidumbre jurídica debido a que mediante la aprobación de la Ley Núm. 7-2022, se excluyó a las cooperativas de la contribución especial.

El 13 de junio de 2025, COSVI presentó una *Oposición a Moción de Desestimación de Demanda Enmendada*.[3] En primer

---

[2] Entrada Núm. 34 en SUMAC TPI.
[3] Entrada Núm. 36 en SUMAC TPI.

lugar, aseveró que la retención injustificada de $3,705,855.00, constituyó un daño específico, inmediato y preciso por lo que tenía legitimación activa. Así, sostuvo que el texto del Art. 7.050 del Código de Seguros, *supra*, le impuso un deber ministerial al Comisionado de Seguros de reembolsar las contribuciones que se hubiesen pagado por error o exceso de lo que se estuviera legalmente obligados a pagar. A tales efectos, manifestó que procedía el auto de *mandamus* ya que no buscaba el pago de una deuda monetaria, sino un reembolso de fondos que nunca debieron haberse cobrado, por tanto, no existía un remedio adecuado o eficaz en ley. Por último, afirmó que tras haber demostrado que ostentaba legitimación activa procedía que el TPI declarara que COSVI no estaba obligado a pagar la contribución especial. Ante ello, solicitó que se declarara No Ha Lugar la *Moción de Desestimación de Demanda Enmendada*.

Así las cosas, el 10 de julio de 2025, el TPI emitió y notificó una *Sentencia*.[4] Mediante esta, determinó que el rembolso reclamado no era objeto de controversia entre las partes. A tales efectos, concluyó que:

> (1) en cuanto al mandamus, lo que obra en el expediente demuestra que, aunque ha mediado cierta dilación, el Comisionado de Seguros no rechazó la procedencia del reembolso solicitado por COSVI y ha detallado las gestiones realizadas para efectuarlo, y (2) respecto a la sentencia declaratoria, los propios actos del Comisionado evidencian que no existe incertidumbre jurídica con relación al efecto de la Ley Núm. 7-2022, supra, ya que, nuevamente, reconoció la procedencia del reembolso solicitado.

Por tanto, resolvió que, conforme a las circunstancias del presente caso, lo que realmente procedía era que COSVI recurriera a la vía ordinaria a través de una acción de cobro de dinero y/o daños y perjuicios, por lo que tenía acceso a un remedio adecuado en ley. En cuanto la imposición de honorarios determinó que el trámite del caso carecía de elementos que llevara al TPI concluir que

---

[4] Entrada Núm. 38 en SUMAC TPI.

el ELA actuó de forma temeraria u obstinada. En consecuencia, declaró Ha Lugar la *Moción de Desestimación a Demanda Enmendada* presentada por el ELA el 27 de mayo de 2025.

Inconforme, el 29 de julio de 2025, el apelante presentó una *Moción Solicitando Reconsideración*.[5] Allí, en síntesis, reiteró los planteamientos que presentó en su oposición a la moción de desestimación. A su vez, sostuvo que en la etapa que se encontraba los procedimientos del caso no procedía que el TPI tomara por cierto las presuntas gestiones realizadas por la OCS toda vez que no media prueba o alegación alguna en la *Demanda Enmendada* a esos efectos. Por lo cual, solicitó que el TPI acogiera la reconsideración y declarara No Ha Lugar la *Moción de Desestimación de Demanda Enmendada* presentada el 27 de mayo de 2025. Atendido el escrito, el 30 de julio de 2025, el TPI notificó una *Resolución Interlocutoria* en la cual declaró No Ha Lugar la *Moción de Reconsideración* presentada por COSVI el 29 de julio de 2025.[6]

Aun insatisfecho, 29 de agosto de 2025, el apelante presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **ERRÓ EL TPI AL PASAR POR ALTO QUE EL DEBER MINISTERIAL AL QUE ESTÁ SUJETA LA PARTE APELADA ES EL DE REEMBOLSAR LA CONTRIBUCCIÓN COBRADA POR ERROR. POR LO CUAL, HASTA QUE NO SE MATERIALICE EL REEMBOLSO, MEDIA INCUMPLIMIENTO DE LA PARTE APELADA CON SU DEBER MINISTERIAL Y PROCEDE EL MANDAMUS.**
>
> **ERRÓ EL TPI AL PASAR POR ALTO QUE LA OCS NO ES LA ÚNICA ENTIDAD DEMANDADA SUJETA A UN DEBER MINISTERIAL.**
>
> **ERRÓ EL TPI AL PASAR POR ALTO QUE EL CÓDIGO DE SEGUROS EXPRESAMENTE DISPONE QUE EL REEMBOLSO ES EL VEHÍCULO JURÍDICO MEDIANTE EL CUAL LA PARTE APELADA TIENE QUE REEMBOLSAR LAS CONTRIBUCCIONES COBRADAS POR ERROR O EN EXCESO DE LO LEGALMENTE OBLIGADO.**

---

[5] Entrada Núm. 39 en SUMAC TPI.
[6] Entrada Núm. 40 en SUMAC TPI.

**ERRÓ EL TPI AL DESVIARSE DEL ESTÁNDAR DE ADJUDICACIÓN DE LA REGLA 10.2 DE PROCEDIMIENTO CIVIL Y NO INTERPRETAR LAS ALEGACIONES DE LA DEMANDA ENMENDADA DE LA FORMA MÁS FAVORABLE A COSVI.**

**ERRÓ EL TPI AL DESESTIMAR LA DEMANDA ENMENDADA, AUN CUANDO CONCLUYÓ —DE FORMA INCORRECTA Y CONTRADICTORIA— QUE EXISTÍA UN REMEDIO EN LEY QUE AMPARABA A COSVI.**

Atendido el recurso, el 4 de septiembre de 2025, emitimos una *Resolución* concediéndole a las partes apeladas hasta el 18 de septiembre de 2025, para presentar sus alegatos en oposición. El 15 de septiembre de 2025, el ELA, por si y en representación de las partes apeladas presentó una *Solicitud de Término Adicional*. Allí, alegó que se veía imposibilitado en responder el recurso dentro del término concedido, dado que varios asuntos de carácter improrrogable coincidieron con el transcurso del término otorgado. Por lo cual, solicitó un término adicional de quince (15) días. Examinado el escrito, el 17 de septiembre de 2025, emitimos una *Resolución* en cual declaramos Ha Lugar la solicitud de prórroga y concedimos a la parte hasta el 3 de octubre de 2025, para presentar su alegato. Oportunamente, el ELA compareció mediante un Alegato en Oposición y negó que el TPI cometiera los errores que COSVI le imputó. Con el beneficio de la comparecencia de ambas partes procedemos a atender el asunto ante nos. *Veamos.*

## II.

### -A-

La moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, es aquella que le permite a una parte solicitar la desestimación de una acción que ha sido presentada en su contra cuando es evidente de las alegaciones de alguna de las defensas afirmativas prosperará. *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043,1065 (2020). En particular, la referida regla lee como sigue:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; (6) dejar de acumular una parte indispensable.

Ahora bien, en lo pertinente a la controversia ante nos, el quinto inciso de la Regla 10.2 de Procedimiento Civil, *supra*, permite al demandado solicitar la desestimación de una acción cuando ésta "deja de exponer una reclamación que justifique la concesión de un remedio". Así pues, la desestimación solicitada se dirige a los méritos de la controversia y no a los aspectos procesales de esta. *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70, 83 (2023). Al evaluar una moción de desestimación bajo este fundamento, los tribunales están obligados a dar por ciertos los hechos bien alegados en la demanda que han sido aseverados de manera clara y concluyente. Íd., pág. 84.

En vista de lo antes mencionado, al plantearse la defensa de dejar de exponer una reclamación que justifique la concesión de un remedio, la demanda no debe desestimarse a menos que se desprenda con toda certeza que la parte no tiene derecho a remedio alguno, independientemente de los hechos que puedan ser probados en apoyo a su reclamación. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 429 (2008). Por este motivo, el Tribunal tendrá que examinar con extrema cautela los hechos alegados y asegurarse de que no existe remedio a favor de la parte demandada y que la insuficiencia es de tal naturaleza que no permite el ejercicio de la acción correspondiente. *Rodríguez v. Tribl. Mpal. y Ramos*, 74 DPR 656, 665 (1953).

De igual forma cabe precisar que, el Tribunal Supremo de Puerto Rico ha expresado que al examinar una moción de este tipo

debemos considerar, "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de [é]ste, la demanda es suficiente para constituir una reclamación válida". *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, supra, pág. 429. Es decir, el Tribunal debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. R. Hernández Colón, *Derecho Procesal Civil*, 5ta ed., San Juan, Ed. Lexis Nexis, 2010, pág. 268. Si de este análisis el Tribunal entiende que no se cumple con el estándar de plausibilidad entonces debe desestimar la demanda, pues no debe permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusivas con el descubrimiento de prueba. Íd. Es por ello, que las alegaciones fácticas deben ser específicas, ya que la especulación no es suficiente para sostener una causa de acción. Íd.

**-B-**

El auto de *mandamus* es el recurso adecuado para solicitarle al tribunal que le ordene a una persona, a una corporación o a un tribunal de inferior jerarquía, que cumpla o ejecute un acto que forma parte de sus deberes y atribuciones. Art. 649 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3421; Regla 54 de Procedimiento Civil, 32 LPRA, *supra*. El *mandamus* no confiere nueva autoridad y la parte a quien obliga deberá tener la facultad de poder cumplirlo. Íd. El carácter privilegiado que caracteriza el *mandamus* significa que su expedición no se invoca como cuestión de derecho, sino que descansa en la sana discreción del foro judicial. *Carrasquillo Román v. Inst. Correccional*, 204 DPR 699, 713 (2020). En estos casos, la discreción implica que el tribunal no está atado a un remedio en específico, "sino que puede diseñar un remedio compatible con los intereses públicos envueltos". *AMPR v. Srio. Educación, E.L.A.*, 178 DPR 253, 269 (2010).

El recurso de *mandamus* solo puede utilizarse para exigir que se cumpla con un deber ministerial cuando no se dispone de otro remedio legal adecuado. Es decir, "no procede cuando hay un remedio ordinario dentro del curso de ley, porque el objeto del auto no es reemplazar remedios legales sino suplir la falta de ellos". Íd., pág. 266-267. Si los remedios de ley no son adecuados y son incompatibles con la justicia, puede recurrirse al *mandamus. González Saldaña v. Tribunal Superior*, 92 DPR 477, 487 (1965). Sobre el deber ministerial, el Tribunal Supremo ha expresado que este "no se trata de una directriz o una disposición que permite hacer algo, sino de un mandato específico que la parte demandada no tiene opción para desobedecer". *Carrasquillo Román v. Inst. Correccional*, supra, pág. 713. El deber ministerial que exige el recurso de *mandamus* emana de un empleo, cargo o función pública. *AMPR v. Srio. Educación, E.L.A.*, supra, pág. 265.

**-C-**

La sentencia declaratoria es un mecanismo por el cual se declara derechos, estados y otras relaciones jurídicas, independientemente de la existencia de otros remedios en ley. Regla 59 de Procedimiento Civil, *supra*; *Alcalde de Guayama v. ELA*, 192 DPR 329, 333 (2015). Es aquella sentencia que se dicta cuando existe una controversia sustancial entre partes con intereses legales adversos, con el propósito de disipar la incertidumbre jurídica. *Mun. Fajardo v. Srio. Justicia et al.,* 187 DPR 245, 254 (2012), citando a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 5ta ed., San Juan, Ed. LexisNexis, 2010, Sec. 6001, pág. 560.

Según la Regla 59.2 de Procedimiento Civil, *supra,* entre las personas facultadas para solicitar una sentencia declaratoria, se encuentran aquellas cuyos derechos, estado u otras relaciones jurídicas fuesen afectadas por un estatuto**.** No obstante, el

promovente de dicho remedio se encuentra sujeto al cumplimiento de los criterios de legitimación activa. *Romero Barceló v. ELA*, 169 DPR 460, 475 (2006). Es decir, tiene que demostrar que sufrió un daño claro e inmediato, no abstracto ni hipotético; que existe conexión entre ese el daño sufrido y la causa de acción ejercitada; y que la causa de acción surge al palio de la constitución o de la ley. *Mun. Fajardo v. Srio. Justicia et al.*, supra, pág. 255.

### III.

En el caso ante nos, la apelante nos solicitó la revocación de la *Sentencia* que se emitió y notificó el 10 de julio de 2025. Mediante la discusión conjunta del primer, segundo y tercer señalamiento de error, arguyó que el TPI abuso de su discreción al emitir un dictamen en total abstracción del derecho aplicable y a la etapa procesal en la que se encontraba el pleito. Sostuvo que el TPI fundamentó su *Sentencia* en la "inferencia fáctica" de que no existía controversia en cuanto al reembolso, obviando el hecho de que tras tres (3) años de solicitudes no se había efectuado la devolución de lo recaudado por la contribución especial. A tenor con lo anterior, esbozó que había realizado su reclamo a través del procedimiento dispuesto en el Art. 7.050 del Código de Seguros, *supra*, el cual le imponía al Comisionado de Seguros el deber de reembolsar o hacer que se reembolse las sumas incorrectamente recaudadas.

Por último, manifestó que en la etapa de los procedimientos que se encontraba el pleito no procedía que se tomara por cierto que el Comisionado de Seguros hubiese realizado las gestiones indicadas toda vez que no media prueba o alegación alguna en la *Demanda Enmendada* a esos efectos. En este sentido, esgrimió que conforme al Art. 7.050 del Código de Seguros, *supra*, ante prueba satisfactoria de que procedía el reembolso, el Comisionado de Seguros no tenía otra opción que reembolsar por si o hacer que se reembolsara la contribución cobrada por error. Así, añadió que de haberse

requerido que el reembolso se tramitara por otra vía el legislador lo hubiera establecido de manera inequívoca.

En cuanto la discusión conjunta del cuarto y quinto señalamiento de error argumentó que el TPI se distanció del estándar de adjudicación de la Regla 10.2 de Procedimiento Civil, *supra*. En primer lugar, señaló que en la reclamación de epígrafe no constaba alegación alguna que obligara al TPI tomar por cierto que el Comisionado de Seguros realizó las gestiones según constaban en la misiva. Indicó que el TPI dio por cierto un hecho que carecía de prueba y sin que mediara alegación que lo sustentara. No obstante, puntualizó que, en la etapa de los procedimientos del caso, el análisis del TPI se debió limitar a tomar por ciertas las alegaciones de la *Demanda Enmendada* de la forma más favorable a COSVI. Por lo que, razonó que el TPI no podía tomar como "realidad fáctica" que el Comisionado de Seguros realizó las gestiones que incluyó en su misiva, sino que le correspondía a este en su día pasar prueba sobre ello.

Por otra parte, en cuanto la determinación del TPI sobre los méritos de la sentencia declaratoria manifestó que el foro pasó por alto la participación del Secretario en la controversia de autos. Sostuvo que fue el Secretario quien emitió una interpretación irreconciliable con la Ley Núm. 239-2004 y el Código de Seguros, obligando a COSVI a pagar la contribución especial en primer lugar. A su vez, reiteró que el Art. 7.050 del Código de Seguros, *supra*, no disponía una acción de cobro de dinero por pago de una contribución por error, sino le imponía un deber al Comisionado de Seguros reembolsar la contribución en la forma en la que el Secretario determinara procedente. Por lo cual, esgrimió que el TPI abuso de su discreción al realizar un análisis completamente desfavorable hacia COSVI de las alegaciones de la *Demanda Enmendada*.

Por estar debidamente relacionados discutiremos todos los señalamientos de error en conjunto. Cónsono con lo anterior, para facilitar nuestra discusión resulta meritorio reiterar las alegaciones más pertinentes del caso que nos ocupa según constan en la *Demanda Enmendada.* En este sentido, el 30 de junio de 2013, se aprobó la Ley Núm. 40-2013, para entre otras cosas, enmendar el Código de Seguros para incorporar el Art. 7.022 (a). A tales efectos, se estableció una contribución especial pagadera al Secretario de Hacienda, por conducto de la OCS. Esta contribución especial fue objeto de varias interpretaciones, por lo que, ante una solicitud de consulta realizada por la OCS en enero de 2016, Hacienda insistió en su aplicabilidad a los aseguradores cooperativos. Por tanto, COSVI sometió los correspondientes pagos por un periodo de ocho (8) años.

A pesar de lo anterior, el 7 de marzo de 2022, se aprobó la Ley Núm. 7-2022 para enmendar el Art. 7.022 de la Ley Núm. 40-2013, donde aclaró que dicha contribución no era aplicable a los aseguradores cooperativos. Por lo cual, la apelante, desde el 31 de marzo de 2022, había realizado distintas solicitudes de reembolso al amparo del Art. 7.050 del Código de Seguros, *supra*, las cuales habían sido infructuosas. Así las cosas, el 8 de octubre de 2024, COSVI cursó una solicitud, tanto a la OCS como Hacienda donde solicitó nuevamente que se le reembolsara lo recaudado indebidamente. En respuesta, el 18 de octubre de 2024, la OCS cursó una misiva donde el Comisionado de Seguros, reconoció que procedía el reembolso a favor de COSVI, así como las gestiones realizadas para dicho propósito.

En primer lugar, la sentencia declaratoria es el mecanismo por el cual se declara derechos, estados y otras relaciones jurídicas, independientemente de la existencia otros remedios en ley. Regla 59 de Procedimiento Civil, *supra*; *Alcalde de Guayama v. ELA*, supra.

Así, es aquella que se dicta cuando existe una controversia sustancial entre partes con intereses legales adversos para poner fin a una incertidumbre jurídica. *Mun. Fajardo v. Srio. Justicia et al.,* supra. Dicho esto, no encontramos que la procedencia del reembolso o la inaplicabilidad de la contribución especial a COSVI sean objeto de controversia en el presente caso. La Ley Núm. 7-2022 es explícita en cuanto a que la contribución especial impuesta en el Art. 7.022 del Código de Seguros no aplica a los aseguradores cooperativos por su naturaleza exenta. De igual forma, el Comisionado de Seguros reconoció y confirmó su posición sobre el reembolso de la contribución pagada por COSVI. Por lo cual, no existe una incertidumbre jurídica que requiera un remedio profiláctico como lo es la sentencia declaratoria.

Respecto a la solicitud de *mandamus*, recordamos que esto es un recurso altamente privilegiado y discrecional para ordenar a una persona que lleve a cabo o ejecute un acto como parte de sus deberes y atribuciones. Art. 649 del Código de Enjuiciamiento Civil, *supra*; Regla 54 de Procedimiento Civil, 32 LPRA, *supra*. Asimismo, es un auto que solo puede utilizarse para exigir que se cumpla un deber ministerial cuando no existe otro remedio adecuado en el curso ordinario de la ley. *AMPR v. Srio. Educación, E.L.A.,* supra. En vista de ello, no encontramos que aludido recurso resulte apropiado ante las circunstancias del presente pleito. Primeramente, la OCS no ha denegado la solicitud de reembolso por parte de COSVI, sino ha reconocido y reafirmado su posición en cuanto a este. A tales efectos, en la misiva que le cursó a la parte apelante del 18 de octubre de 2024, detalló las gestiones que realizó ante varias agencias públicas, las cuales transcribimos a continuación:

> El 19 de abril de 2023, el Sr. Jaime Adorno, Director de Finanzas de la OCS, envió a la Leda. Suhaily Sepulveda, Subsecretaria Auxiliar de Área Finanzas Publicas del Departamento, una certificación donde indicaba la cantidad de $3,705,855 que recaudó la OCS a favor del

Secretario de Hacienda por concepto de la contribución especial del 1 % bajo la Ley 40-2013.

El 5 de mayo de 2023, la Sra. Glorimar Santiago, Comisionada Auxiliar de Supervisión y Cumplimiento de la OCS, le envió a la Leda. Suhaily Sepúlveda, un memorándum de evaluación de la devolución del pago de la contribución especial de primas de 1% de COSVI con la determinación de la OCS, en la cual se recomendó que se refiera al Departamento la evidencia de pagos realizados por COSVI para que así se proceda con el reembolso.

El 14 de junio de 2023, y seguimientos del 23 de junio, 17 de julio y 15 de agosto de 2023, el Sr. Jaime Adorno le envió comunicación electrónica a la Sra. Aracelis Vázquez Velázquez de OGP solicitando información para trabajar el reembolso.

El 15 de agosto de 2023, el Sr. Jaime Adorno le envió comunicación electrónica a la Sra. Deborah Cintrón Ramos de OGP donde anejó la solicitud de reembolso de COSVI y evidencia de los pagos realizados. El 25 de septiembre de 2023, la Sra. Deborah Cintrón envió un correo electrónico indicando que copió al personal del Departamento para que le brindaran información de cómo se reciben los fondos para determinar si hay que solicitar autorización de la Junta de Control Fiscal. El 11 de octubre de 2023, el Sr. Jaime Adorno le dio seguimiento.

El 13 de octubre de 2023, se realizó una reunión por "Microsoft Teams" entre personal de OGP, Departamento y la OCS, en la se solicitó una consulta de la División de Asuntos Legales de la OCS sobre el proceder del reembolso de la contribución. En dicha reunión participó con parte de la OCS, el Sr. Jaime Adorno y la Leda. Brenda Pérez, Comisionada Auxiliar de Asuntos Legales.

El 17 de octubre de 2023, el Sr. Jaime Adorno envió respuesta de la consulta de legal sobre el proceder del reembolso a Deborah Cintrón (OGP) y Leda. Suhaily Sepúlveda (Departamento) esto debido a que las contribuciones pagadas fueron contabilizadas en el Fondo General de cada uno de los años que fueron pagadas y se necesita obtener la aprobación del Departamento. El 8 de enero de 2024, el Sr. Jaime Adorno dio seguimiento.

El 18 de enero de 2024, el Sr. José Chávez del Departamento establece que necesita análisis y dirección de OGP para trabajar el reembolso de COSVI. La OCS dio seguimiento el 15 de febrero, y 2 de mayo de 2024.

El 8 de octubre de 2024, la Sra. Cecilia Robles del Departamento de Hacienda le solicitó información al Sr. Jaime Adorno sobre los pagos realizados por COSVI y que se encuentran trabajando el reembolso. El 9 de

octubre de 2024, se envió la información solicitada por esta.[7]

Conforme a lo anterior, y en la medida en que las comunicaciones y gestiones reseñadas evidencian que el proceso de reembolso se encuentra en trámite, no podemos concluir que medie incumplimiento ministerial que amerite la expedición de un auto de *mandamus*. La controversia planteada no gira en torno a si COSVI tiene derecho al reembolso —pues ello fue reconocido por las agencias—, sino al procedimiento mediante el cual se materializará el mismo. A tales efectos, determinamos que COSVI podrá hacer valer su derecho de forma adecuada en un pleito ordinario de cobro de dinero donde, además, COSVI podrá reclamar intereses, costas y honorarios de abogado si así lo estimara pertinente.

De este modo, resolvemos que el TPI actuó correctamente al desestimar la *Demanda Enmendada*, al existir un remedio ordinario en ley que permite a COSVI vindicar sus derechos. Dicho lo anterior, los errores señalados no fueron cometidos. Aclaramos que, con esta determinación, no prejuzgamos la procedencia de las alegaciones sustantivas de la parte apelante, sino que nos limitamos a sostener que el vehículo procesal escogido, a saber, el *mandamus* y la sentencia declaratoria, no era el apropiado bajo las circunstancias del caso.

**IV.**

Por los fundamentos que anteceden, ***confirmamos*** la determinación recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[7] Entrada Núm. 25 en SUMAC TPI, anejo 6.